### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| **Terri Pepper, Dallas Dean, Dave Semans, Carl Moreland, Harold Aydelott, David Cathey, Justin Evans, Kathy Duff, Melanie Edwards, Michael Delong, Nicole Vela Groskopf, Richard Henderson, Todd Cianciulli, Julie Leichtle, and Clint Steiner, individually and on behalf of all others similarly situated,** ) ) ) ) ) ) ) ) ) | |
| **Plaintiff,** ) ) | **Case No. 4:20-cv-2961** |
| **v.** ) ) ) | |
| **Best Storm Leads Corp.,** ) ) | |
| **Defendant.** ) | |

### <u>CLASS ACTION COMPLAINT</u>

Plaintiffs, Terri Pepper, Dallas Dean, Dave Semans, Carl Moreland, Harold Aydelott, David Cathey, Justin Evans, Kathy Duff, Melanie Edwards, Michael Delong, Nicole Vela Groskopf, Richard Henderson, Todd Cianciulli, Julie Leichtle and Clint Steiner (collectively "Plaintiffs), on behalf of themselves and all other similarly situated parties, by and through their undersigned counsel, and pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and Fed. R. Civ. P. 23, files this Class Action against Defendant, Best Storm Leads Corp. ("Defendant" or "Best Storm").

### I.     PARTIES

1.     Plaintiff, Terri Pepper, is an individual and a citizen of Texas residing in Woodland, Texas.  At all relevant times Plaintiff Pepper was the user, subscriber, owner and possessor of the residential telephone number ending in -0401.

2.      Plaintiff Dallas Dean is an individual and a citizen of Texas residing in Magnolia, Texas. At all relevant times Plaintiff Dean was the user, subscriber, owner and possessor of the residential telephone number ending in -5265.  Dean is also the subscriber of a residential telephone number ending in -5888.

3.      Plaintiff Dave Semans is an individual and a citizen of Texas residing in Plano, Texas. At all relevant times Plaintiff Semans was the user, subscriber, owner and possessor of the residential telephone number ending in -5209.

4.      Plaintiff Carl Moreland is an individual and a citizen of Texas residing in Sulphur Springs, Texas. At all relevant times Plaintiff Moreland was the user, subscriber, owner and possessor of the residential telephone number ending in -7628

5.      Plaintiff Harold Aydelott is an individual and a citizen of Texas residing in Fort Worth Texas. At all relevant times Plaintiff Aydelott was the user, subscriber, owner and possessor of the residential telephone number ending in -4693.

6.      Plaintiff David Cathey is an individual and a citizen of Texas residing in McKinney, Texas. At all relevant times Plaintiff Cathey was the user, subscriber, owner and possessor of the residential telephone ending in -6846.

7.      Plaintiff Justin Evans is an individual and a citizen of Texas residing in Spring, Texas. At all relevant times Plaintiff Evans was the user, subscriber, owner, and possessor of the residential telephone number ending in -8933.

8.      Plaintiff Kathy Duff is an individual and a citizen of Minnesota residing in St Paul, Minnesota. At all relevant times Plaintiff Duff was the user, subscriber, owner, and possessor of the residential telephone number ending in -4111.

9.      Plaintiff Melanie Edwards is an individual and a citizen of Florida residing in

Clermont, Florida. At all relevant times Plaintiff Edwards was the user, subscriber, owner and possessor of the residential telephone number ending in -3381.

10.     Plaintiff Michael Delong is an individual and a citizen of Texas residing in Arlington, Texas.  At all relevant times Plaintiff Delong was the user and possessor of the residential telephone number ending in -5431.

11.     Plaintiff Nicole Vela Groskopf is an individual and a citizen of Texas residing in Willis, Texas.  At all relevant times Plaintiff Groskopf was the user, subscriber, owner and possessor of the residential telephone number ending in -0604.

12.     Plaintiff Richard Henderson is an individual and a citizen of Texas residing in League City, Texas.  At all relevant times Plaintiff Henderson was the user, subscriber, owner and possessor of the residential telephone number ending in -2765.

13.     Plaintiff Todd Cianciulli is an individual and a citizen of Texas residing in Scurry, Texas.  At all relevant times Plaintiff Cianciulli was the user, subscriber, owner and possessor of the residential telephone number ending in -4391.  Cianciulli is also the subscriber of a residential telephone number ending in --7562.

14.     Plaintiff Julie Leichtle is an individual and a citizen of Texas residing in Coppell, Texas.  At all relevant times Plaintiff Leichtle was the user, subscriber, owner and possessor of the residential telephone number ending in -5800.  Leichtle is also the subscriber and owner of, and her husband is the user of, a residential telephone number ending in -8784.

15.     Plaintiff Clint Steiner is an individual and a citizen of Colorado residing in Thornton, Colorado.  At all relevant times Plaintiff Steiner was the user, subscriber, owner and possessor of the residential telephone number ending in -1133.

16.     Defendant, Best Storm Leads Corp. is a corporation organized and existing

under the laws of the State of Minnesota.

## II.    JURISDICTION AND VENUE

17.    Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the TCPA, a federal statute.

18.    The Court has personal jurisdiction over Defendant because Defendant operates within this state and the challenged marketing calls at issue in this case were directed by Defendant to residents within this state.

19.    Venue is proper in the this district pursuant to 28 U.S.C. § 1391 (b)(2)-(3) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District and Defendant is subject to the Court's jurisdiction in this district.

## III.    INTRODUCTION

20.    Plaintiffs brings this action under the TCPA.

21.    The TCPA was enacted in response to widespread public outrage concerning the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

22.    The TCPA is designed to protect consumer privacy by prohibiting, among other things, autodialed telemarketing calls to cellular telephones without the "prior express written consent" of the called party.  47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

23.    The TCPA also prohibits unsolicited telemarketing calls to consumers who have added their telephone number to the national "Do Not Call" registry.  47 C.F.R. § 64.1200(c)(2).

24.    Best Storm made automated telemarketing calls to Plaintiffs using equipment prohibited by the TCPA, even though it did not have their prior express written consent to do

so, and Best Storm also made unsolicited telemarketing calls to Plaintiffs despite their inclusion on the national "Do Not Call" registry.

25.     Plaintiffs did not give prior express written consent to receive autodialed phone call on their cellular phone from Best Storm.

26.     Plaintiffs seek class-wide relief against Best Storm for violating the Telephone Consumer Protection Act, 47 U.S.C. § 227.  A class action is the best means of obtaining redress for Best Storm's illegal marketing calls and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

27.     Best Storm's practice caused actual harm to Plaintiffs and the other members of the Class in several ways, including temporarily using their cellular phones and tying up their phone lines, invading their privacy, causing wear and tear on their cellular phones, consuming battery life, and causing some of them to be charged for calls they did not want to receive. Moreover, these calls injured Plaintiffs and the Class because they were frustrating, obnoxious, annoying, and a nuisance, and disturbed their solitude.

### IV.     THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

28.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

29.     When Congress enacted the TCPA in 1991, it found that telemarketers were calling 18 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991,* 18 FCC Rcd. 14014, 14021 ¶ 8 (2003) ("2003 Order"). By 2003, telemarketers were

5

calling 104 million Americans every day, assisted by the proliferation of new and more powerful autodialing technology. *Id.* at ¶¶ 2, 8.

30.     The problems Congress identified when it enacted the TCPA have only grown worse in recent years. The FCC has emphasized that action must be taken to "stop the scourge of illegal robocalls" because "U.S. consumers received approximately 2.4 billion robocalls per month in 2016." Federal Communications Commission, *The FCC's Push to Combat Robocalls & Spoofing,* https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing (last visited Jan. 31, 2020).

31.     The TCPA requires prior express written consent for all autodialed telemarketing calls to cellular telephone numbers.  *In re Rules and Regulations Implementing the TCPA of 1991,* 27 FCC Rcd. 1830, 1844 (2012); 47 C.F.R. § 64.1200(f)(1), (12).

32.     "The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."  47 C.F.R. § 64.1200(f)(8).

33.     "The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services."  47 C.F.R.

64.1200(f)(8)(i)(A).

34.     The TCPA also prohibits telemarketing calls, whether or not initiated by an autodialer, to consumers who have added their number to the national "Do Not Call" registry. 47 U.S.C. § 227(c); 47 C.F.R. 64.1200(c)(2).

## V.     Individual Allegations

35.     On information and belief, Defendant, surreptitiously obtained the cellular telephone number of Plaintiff Pepper and others, then proceeded to send or cause others to send unsolicited telemarketing marketing calls to those individuals, using automatic telephone dialing equipment and without regard for their status as registrants of the national "Do Not Call" list.

36.     Best Storm's telemarketing calls advertised the availability of a roof inspection and repair without their prior express written consent.

### A.     *Plaintiff Pepper*

37.     Plaintiff Pepper's telephone number, ending in the number 0401, is registered to a cellular telephone service.  All calls to Plaintiff Pepper described herein were to that cellular telephone number.

38.     Plaintiff Pepper's telephone number has been on the National Do Not Call Registry since July 29, 2019.

39.      On June 15, 2020, at around 5:19 p.m. (CST), Plaintiff Pepper received an unsolicited call on her cellular phone.

40.     The caller ID showed the phone call was from (281) 609-8124, which she subsequently learned was from Best Storm.

41.     Plaintiff Pepper answered.

42.     Unlike on a normal call, no one promptly announced themself to Plaintiff Pepper. Instead, Plaintiff Pepper heard an unnatural click and pause.

43.     A pause followed by a "click" or "beep" is evidence of the caller's use of a predictive dialer, which uses an algorithm to "predict" when telemarketing agents will be available to field the call. See 2003 Order, 18 FCC Rcd. at 14022, n. 31. (in 2003, the FCC expressed growing concern about the proliferation of predictive dialing systems that use "a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that predicts the time when a consumer will answer the phone and the telemarketer will be available to take the call.").

44.     Eventually a live salesperson did come on the line.

45.     The salesperson pitched Plaintiff Pepper on having a roof inspection performed, and the salesperson concealed the company's true name.

46.     Plaintiff Pepper did not provide her prior express written consent to receive more telemarketing calls.

47.     On June 16, 2020, 2020, at around 9:52 a.m. (CST), Plaintiff Pepper received an unsolicited call on her cellular phone from Best Storm.

48.     The caller ID showed the phone call was from (281) 609-8125.

49.     Plaintiff Pepper answered, and no one promptly announced themselves to Plaintiff Pepper.

50.     Eventually a live salesperson did come on the line.

51.     The salesperson pitched Plaintiff Pepper on having a roof inspection

performed, and the salesperson concealed the company's true name and stated that they were calling on behalf of "Texas Roofing," a nonexistent entity.

52.     Plaintiff Pepper did not give Best Storm her cellular telephone number.

53.     On June 17, 2020, at around 9:37 a.m. (CST), Plaintiff Pepper received an unsolicited call on her cellular phone from Best Storm.

54.     The caller ID showed the phone call was from (281) 609-8169.

55.     Plaintiff Pepper answered, and no one promptly announced themselves to Plaintiff Pepper.

56.     Eventually a live salesperson did come on the line.

57.     The salesperson pitched Plaintiff Pepper on having a roof inspection performed, and the salesperson concealed the company's true name and identified themselves with the false name "Texas Roofing."

B.      ***Plaintiff Dean***

58.     Plaintiff Dean's telephone numbers ending in -5265 and -5888 are registered to a cellular telephone service.

59.     Dean's -5265 telephone number has been on the National Do Not Call Registry since January 11, 2006.  Dean's -5888 telephone number has been on the National Do Not Call Registry since June 29, 2003.

60.     Neither Dean nor his wife have ever given prior express written consent to be called by Best Storm.

61.     On April 26, 2020 at around 11:18 a.m. (CST), Plaintiff Dean received an unsolicited call at the -5265 telephone number.

62.     The caller ID showed the phone call was from (346) 261-0508, which he

subsequently learned was from Best Storm.

63.     Plaintiff Dean answered.

64.     Unlike on a normal call, no one promptly announced themself to Plaintiff Dean. Instead, Plaintiff Dean heard an unnatural click and pause.

65.     Eventually a live salesperson did come on the line.

66.     The salesperson pitched Plaintiff Dean on having a roof inspection performed, and the salesperson concealed the company's true name and identified themselves with the false name "Texas Construction."

67.     Plaintiff Dean did not give Best Storm his cellular telephone number.

68.     On April 28, 2020, at 4:49 p.m. (CST), Plaintiff Dean received an unsolicited call at the -5265 telephone number from Best Storm.

69.     On April 29, 2020, at 11:52 a.m. (CST), Plaintiff Dean received an unsolicited call at the -5265 telephone number from Best Storm.

70.     On May 2, 2020, at 1:25 p.m. (CST), Plaintiff Dean received an unsolicited call at the -5265 telephone number from Best Storm.

71.     On May 4, 2020, at 3:35 p.m. (CST), Plaintiff Dean received an unsolicited call at the -5888 telephone number from Best Storm.

72.     On May 12, 2020, at 2:04 p.m. (CST), Plaintiff Dean received an unsolicited call at the -5265 telephone number from Best Storm.

73.     On May 14, 2020, at 11:43 a.m. (CST), Plaintiff Dean received an unsolicited call at the -5888 telephone number from Best Storm.

**C.     *Plaintiff Semans***

74.     Plaintiff Semans' telephone number, ending in the number 5209, is registered

10

to a cellular telephone service.  All calls to Plaintiff Semans described herein were to that cellular telephone number.

75.     Plaintiff Semans' telephone number has been on the National Do Not Call Registry since September 26, 2007.

76.     On May 31, 2019, at around 11:14 a.m. (CST), Plaintiff Semans received an unsolicited call on his cellular phone.

77.     The caller ID showed the phone call was from (469) 270-6807, which he subsequently learned was from Best Storm.

78.     Plaintiff Semans answered.

79.     Unlike on a normal call, no one promptly announced themself to Plaintiff Semans. Instead, Plaintiff Semans heard an unnatural click and pause.

80.     Eventually a live salesperson did come on the line.

81.     The salesperson pitched Plaintiff Semans on having a roof inspection performed, and the salesperson concealed the company's true name and identified themselves with the false name "Texas One." .

82.     Plaintiff Semans did not provide his prior express written consent to receive more telemarketing calls.

83.     On June 5, 2019 at around 5:43 p.m. (CST), Plaintiff Semans received an unsolicited call on his cellular phone from Best Storm, who again identified themselves as "Texas One."

84.     On June 8, 2019 at around 11:21 p.m. (CST), Plaintiff Semans received an unsolicited call on his cellular phone from Best Storm, who again identified themselves as

"Texas One."

85.     On June 13, 2019 at around 11:49 a.m. (CST), Plaintiff Semans received an unsolicited call on his cellular phone from Best Storm, who identified themselves this time using the false name "Texas Roofing and Restoration."

86.     On August 20, 2019 at around 4:44 p.m. (CST), Plaintiff Semans received an unsolicited call on his cellular phone from Best Storm.

**D.     *Plaintiff Moreland***

87.     Plaintiff Moreland's telephone number, ending in number 7628, is registered to a cellular telephone service.   All marketing calls to Plaintiff Moreland described herein were to that cellular telephone number.

88.     Plaintiff Moreland's telephone number has been on the National Do Not Call Registry since June 30, 2003.

89.     On August 29, 2019 at around 4:21 p.m. (CST), Plaintiff Moreland received an unsolicited call on his cellular phone.

90.     The caller ID showed the phone call was from (208) 639-9166, which he subsequently learned was from Best Storm.

91.     Plaintiff answered.

92.     Unlike on a normal call, no one promptly announced themself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.                                    .

93.     Eventually a live salesperson did come on the line.

94.     The salesperson pitched Plaintiff Moreland on having a roof inspection performed, and the salesperson concealed the company's true name and identified themselves with the false name "Texas Roofing."

12

95.     Plaintiff Moreland did not provide his prior express written consent to receive more telemarketing calls.

**E.      *Plaintiff Aydelott***

96.     Plaintiff Aydelott's telephone number, ending in number 4693, is registered to a cellular telephone service.  All marketing calls to Plaintiff Aydelott described herein were to that cellular telephone number.

97.     Plaintiff Aydelott's telephone number has been on the National Do Not Call Registry since September 22, 2007.

98.     On June 8, 2020 at around 5:48 p.m. (CST), Plaintiff Aydelott received an unsolicited call on his cellular phone.

99.     The caller ID showed the phone call was from (817) 761-0945, which Plaintiff Aydelott subsequently learned was Best Storm.

100.    Plaintiff Semans answered.

101.    Unlike on a normal call, no one promptly announced themself to Plaintiff Semans. Instead, Plaintiff Semans heard an unnatural click and pause.

102.    Eventually a live salesperson did come on the line.

103.    The salesperson pitched Plaintiff Aydelott on having a roof inspection performed, and the salesperson concealed the company's true name and identified themselves with the false name "Texas One Roofing Inspections."

104.    Plaintiff Aydelott did not provide his prior express written consent to receive more telemarketing calls.

**F.      *Plaintiff Cathey***

105.     Plaintiff Cathey's telephone number, ending in number 6846, is registered to a cellular telephone service.  All calls to Plaintiff Cathey described herein were to that cellular telephone number.

106.     Plaintiff Cathey's telephone number has been on the National Do Not Call Registry since June 30, 2003.

107.     On November 8, 2019 (CST), at 4:23 p.m., Plaintiff Cathey received an unsolicited call on his cellular phone.

108.     The caller ID showed the phone call was from (972) 943-3625, which he subsequently learned was from Best Storm.

109.     Plaintiff Cathey answered.

110.     Unlike on a normal call, no one promptly announced themself to Plaintiff Cathey. Instead, Plaintiff Cathey heard an unnatural click and pause.

111.     Eventually a live salesperson did come on the line.

112.     The salesperson pitched Plaintiff Cathey on having a roof inspection performed, and the salesperson concealed the company's true name and identified themselves with the false name "Texas Fast." .

113.     Plaintiff Cathey did not provide his prior express written consent to receive more telemarketing calls.

114.     On November 9, 2019 at around 9:11 a.m. (CST), Plaintiff Cathey received an unsolicited call on his cellular phone from Best Storm, who again identified themselves as "Texas Fast."

115.     On November 11, 2019 at around 1:11 p.m. (CST), Plaintiff Cathey received

an unsolicited call on his cellular phone from Best Storm, who again identified themselves as "Texas Fast."

116.    On November 15, 2019 at around 10:18 a.m. (CST), Plaintiff Cathey received an unsolicited call on his cellular phone from Best Storm, who again identified themselves as "Texas Fast."

117.    Plaintiff Cathey did not provide his prior express written consent to receive telemarketing calls.

### G.    *Plaintiff Evans*

118.    Plaintiff Evans's telephone number, ending in 8933, is registered to a cellular telephone service.  All calls to Plaintiff Evans described herein were to that cellular telephone number.

119.    Plaintiff Evans's telephone number has been on the National Do Not Call Registry since January 4,2005.

120.    On February 7, 2020 at around 10:04 a.m. (CST), Plaintiff Evans received an unsolicited call on his cellular phone

121.    The caller ID showed the phone call was from (832) 573-0090 which he subsequently learned was from Best Storm

122.    Plaintiff Evans missed that call.

123.    On February 7, 2020 at around 3:08 p.m. (CST), Plaintiff Evans received an unsolicited call on his cellular phone

124.    The caller ID showed the phone call was from (832) 573-0090 which he subsequently learned was from Best Storm

125.    Plaintiff Evans missed that call.

126.    On February 7, 2020 at around 10:04 a.m. (CST), Plaintiff Evans received an unsolicited call on his cellular phone

127.    The caller ID showed the phone call was from (832) 573-0090 which he subsequently learned was from Best Storm

128.    Plaintiff Evans answered.

129.    Unlike on a normal call, no one promptly announced themself to Plaintiff Evans. Instead, Plaintiff Evans heard an unnatural click and pause.

130.    Eventually a live salesperson did come on the line.

131.    The salesperson pitched Plaintiff Evans on having a roof inspection performed, and the salesperson concealed the company's true name and identified themselves with the false name "Texas Roofing."

132.    Plaintiff Evans did not provide his prior express written consent to receive more telemarketing calls.

**H.    *Plaintiff Duff***

133.    Plaintiff Duff telephone number, ending in number 4111, is registered to a cellular telephone service.  All calls to Plaintiff Duff described herein were to that cellular telephone number.

134.    Plaintiff Duff's telephone number has been on the National Do Not Call Registry since March 21, 2009.

135.    On March 8, 2020 at 12:09 p.m. (CST), Plaintiff Duff received an unsolicited call on her cellular phone.

136.    The caller ID showed the phone call was from (651) 409-6148, which she subsequently learned was from Best Storm.

137.    Plaintiff Duff missed that call.

138.    On March 12, 2020, at 12:30 p.m. (CST), Plaintiff Duff received an unsolicited call on her cellular phone.

139.    The caller ID showed the phone call was from (651) 409-6238, which she subsequently learned was from Best Storm.

140.    Plaintiff missed that call.

141.    On March 20, 2020, at 10:28 a.m. (CST), Plaintiff Duff received an unsolicited call on her cellular phone.

142.    The caller ID showed the phone call was from (651) 409-4593, which she subsequently learned was from Best Storm.

143.    Plaintiff missed that call.

144.    On March 25, 2020, at 1:56 p.m. (CST), Plaintiff Duff received an unsolicited call on her cellular phone.

145.    The caller ID showed the phone call was from (651) 409-6394, which she subsequently learned was from Best Storm.

146.    Plaintiff answered that call.

147.    Unlike on a normal call, no one promptly announced themself to Plaintiff Duff. Instead, Plaintiff Duff heard an unnatural click and pause.

148.    Eventually a live salesperson did come on the line.

149.    The salesperson pitched Plaintiff Duff on having a roof inspection performed, and the salesperson concealed the company's true name and identified themselves with the

false name "Minnesota First Roofing."

150.    On June 17, 2020, at 1:15 p.m. (CST), Plaintiff Duff received another unsolicited call on her cellular phone from Best Storm, who identified themselves with the false name "Midwest Roofing."

151.    Plaintiff Duff did not provide her prior express written consent to receive telemarketing calls.

I.    *Plaintiff Edwards*

152.    Plaintiff Edwards' telephone number, ending in number 3381, is registered to a cellular telephone service.  All calls to Plaintiff Edwards described herein were to that cellular telephone number.

153.    Plaintiff Edwards' telephone number has been on the National Do Not Call Registry since December 15, 2004.

154.    On June 22, 2020 at around 5:31 p.m. (EST), Plaintiff Edwards received an unsolicited call on her cellular phone

155.    The caller ID showed the phone call was from (386) 300-8167 which she subsequently learned was from Best Storm

156.    Plaintiff Edwards answered.

157.    Unlike on a normal call, no one promptly announced themself to Plaintiff Edwards. Instead, Plaintiff Edwards heard an unnatural click and pause.

158.    Eventually a live salesperson did come on the line.

159.    The salesperson pitched Plaintiff Edwards on having a roof inspection performed, and the salesperson concealed the company's true name and identified themselves

with the false name "Florida First Home Inspections."

160.    Plaintiff Edwards did not provide prior express written consent to receive telemarketing calls.

**J.      *Plaintiff Delong***

161.    Plaintiff Delong's telephone number, ending in number 5431, is registered to a cellular telephone service.  All calls to Plaintiff Delong described herein were to that cellular telephone number.

162.    Plaintiff Delong's telephone number has been on the National Do Not Call Registry since June 25, 2006.

163.    On May 5, 2020, at around 2:00 p.m. (CST), Plaintiff Delong received an unsolicited call on his cellular phone.

164.    The caller ID showed the phone call was from (469) 498-0156 which he subsequently learned was from Best Storm.

165.     Plaintiff Delong answered.

166.    Unlike on a normal call, no one promptly announced themself to Plaintiff Delong. Instead, Plaintiff Delong heard an unnatural click and pause.

167.    Eventually a live salesperson did come on the line.

168.    The salesperson pitched Plaintiff Delong on having a roof inspection performed, and the salesperson concealed the true name of the company and identified themselves with the false name "Up to Date Roofing."

169.    Plaintiff DeLong did not provide prior express written consent to receive telemarketing calls.

19

### K.      *Plaintiff Groskopf*

170.    Plaintiff Groskopf's telephone number, ending in number 0604, is registered to a cellular telephone service.  All calls to Plaintiff Groskopf described herein were to that cellular telephone number.

171.    Plaintiff Groskopf's telephone number has been on the National Do Not Call Registry since July 7, 2010.

172.    On June 10, 2020 at around 12:56 p.m. (CST), Plaintiff Groskopf received an unsolicited call on her cellular phone.

173.    The caller ID showed the phone call was from (210) 942-5453 which she subsequently learned was from Best Storm.

174.     Plaintiff Groskopf missed that call.

175.    On June 11, 2020 at around 9:50 a.m. (CST), Plaintiff Groskopf received an unsolicited call on her cellular phone.

176.    The caller ID showed the phone call was from (210) 942-5475 which she subsequently learned was from Best Storm.

177.     Plaintiff Groskopf answered that call, but she immediately ended it after not hearing anyone on the other end.

178.    On June 12, 2020 at around 9:46 a.m. (CST), Plaintiff Groskopf received an unsolicited call on her cellular phone.

179.    The caller ID showed the phone call was from (210) 942-3081 which she subsequently learned was from Best Storm.

180.     Plaintiff Groskopf answered that call, but hung up after a few seconds when she realized it was a telemarketer.

181.    On June 12, 2020 at around 11:26 a.m. (CST), Plaintiff Groskopf received an unsolicited call on her cellular phone.

182.    The caller ID showed the phone call was from (210) 942-5608 which she subsequently learned was from Best Storm.

183.    Plaintiff Groskopf answered.

184.    Unlike on a normal call, no one promptly announced themself to Plaintiff Groskopf. Instead, Plaintiff Groskopf heard an unnatural click and pause.

185.    Eventually a live salesperson did come on the line.

186.    The salesperson pitched Plaintiff Groskopf on having a roof inspection performed, and the salesperson concealed the true name of the company and identified themselves with the false name "Texas Roofing."

187.    Plaintiff Groskopf did not provide prior express written consent to receive telemarketing calls.

**L.     *Plaintiff Henderson***

188.    Plaintiff Henderson's telephone number, ending in number 2765, is registered to a cellular telephone service.  All calls to Plaintiff Henderson described herein were to that cellular telephone number.

189.    Plaintiff Henderson's telephone number has been on the National Do Not Call Registry since November 11, 2010.

190.    On May 21, 2020, at around 2:58 p.m. (CST), Plaintiff Henderson received an unsolicited call on his cellular phone.

191.    The caller ID showed the phone call was from (281) 675-0098 which he

21

subsequently learned was from Best Storm.

192.    Plaintiff Henderson answered.

193.    Unlike on a normal call, no one promptly announced themself to Plaintiff Henderson. Instead, Plaintiff Henderson heard an unnatural click and pause.

194.    Eventually a live salesperson did come on the line.

195.    The salesperson pitched Plaintiff Henderson on having a roof inspection performed, and the salesperson concealed the true name of the company and identified themselves with the false name "Texas Roofing."

196.    Plaintiff Henderson asked the salesperson how they had gotten his number, and the salesperson stated that they use a database of phone numbers for homes in areas where there has recently been hail reported.

197.    Plaintiff Henderson did not provide prior express written consent to receive telemarketing calls.

**M.    *Plaintiff Cianciulli***

198.    Plaintiff Cianciulli's telephone numbers, ending in number 4391 and in number 7562, are registered to a cellular telephone service.  All calls to Plaintiff Cianciulli described herein were to those cellular telephone number.

199.    Plaintiff Cianciulli's -4391 telephone number has been on the National Do Not Call Registry since July 1, 2003.  Cianciulli's -7562 telephone number has been on the National Do Not Call Registry since January 30, 2008.

200.    Neither Cianculli nor his wife have ever given prior express written consent to be called by Best Storm.

201.    On January 28, 2020 at around 7:01 p.m. (CST), Plaintiff Cianculli received

an unsolicited call at the -4391 telephone number.

202.    The caller ID showed the phone call was from (214) 381-6787, which he subsequently learned was from Best Storm.

203.    Plaintiff Cianculli answered.

204.    Unlike on a normal call, no one promptly announced themself to Plaintiff Dean. Instead, Plaintiff Dean heard an unnatural click and pause.

205.    Eventually a live salesperson did come on the line.

206.    The salesperson pitched Plaintiff Dean on having a roof inspection performed, and the salesperson concealed the company's true name and identified themselves with the false name "Texas Fast."

207.    On April 28, 2020, at 10:09 a.m. (CST), Plaintiff Cianculli received an unsolicited call at the -7562 telephone number from Best Storm, who again identified themselves as "Texas Fast."

208.    On April 28, 2020, at 5:17 p.m. (CST), Plaintiff Cianculli received an unsolicited call at the -7562 telephone number from Best Storm, who again identified themselves as "Texas Fast."

209.    On April 29, 2020, at 10:24 a.m. (CST), Plaintiff Cianculli received an unsolicited call at the -7562 telephone number from Best Storm, who again identified themselves as "Texas Fast."

210.    On April 29, 2020, at 10:28 a.m. (CST), Plaintiff Cianculli received an unsolicited call at the -4391 telephone number from Best Storm, who again identified themselves as "Texas Fast."

### N.    *Plaintiff Leichtle*

211.    Plaintiff Leichtle's telephone numbers, ending in number -5800 and -8784, are registered to a cellular telephone service.  All calls to Plaintiff Leichtle described herein were to those cellular telephone number.

212.    Plaintiff Leichtle's -5800 telephone number has been on the National Do Not Call Registry since March 7 2013.  Leichtle's -8784 telephone number has been on the National Do Not Call Registry since August 16, 2003.

213.    Neither Leichtle nor her husband have ever given prior express written consent to be called by Best Storm.

214.    On October 21, 2019, at around 11:24 a.m. (CST), Plaintiff Leichtle received an unsolicited call at the -8784 telephone number.

215.    The caller ID showed the phone call was from (823) 400-2321, which she subsequently learned was from Best Storm.

216.    Plaintiff Leichtle answered.

217.    Unlike on a normal call, no one promptly announced themself to Plaintiff Leichtle. Instead, Plaintiff Leichtle heard an unnatural click and pause.

218.    Eventually a live salesperson did come on the line.

219.    The salesperson pitched Plaintiff Leichtle on having a roof inspection performed, and the salesperson concealed the company's true name and identified themselves with the false name "Texas Fast."

220.    Plaintiff Leichtle asked for a website for their business, and the salesperson stated that their website "didn't work."

221.    On October 22, 2019, at 12:48 p.m. (CST), Plaintiff Leichtle received an unsolicited call at the -5800 telephone number from Best Storm, who again identified

themselves as "Texas Fast."

222.     On October 22, 2019, at 12:48 p.m. (CST), Plaintiff Leichtle received an unsolicited call at the -5800 telephone number from Best Storm, who again identified themselves as "Texas Fast."

223.     On October 22, 2019, at 124:45 p.m. (CST), Plaintiff Leichtle received an unsolicited call at the -5800 telephone number from Best Storm, who again identified themselves as "Texas Fast."

224.     On October 23, 2019, at 11:02 a.m. (CST), Plaintiff Leichtle received an unsolicited call at the -5800 telephone number from Best Storm, who again identified themselves as "Texas Fast."

225.     Plaintiff Liechtle again asked for the company's website, and the salesperson stated that they didn't have a current website because it "had been hacked."

226.     On October 24, 2019, at 10:43 a.m. (CST), Plaintiff Leichtle received an unsolicited call at the -5800 telephone number from Best Storm, who again identified themselves as "Texas Fast."

227.     On October 24, 2019, at 10:48 a.m. (CST), Plaintiff Leichtle received an unsolicited call at the -5800 telephone number from Best Storm, who again identified themselves as "Texas Fast."

228.     On December 12, 2019, at 2:34 p.m. (CST), Plaintiff Leichtle received an unsolicited call at the -5800 telephone number from Best Storm, who again identified themselves as "Texas Fast."

229.     Plaintiff Leichtle again asked for the company's website, and the salesperson provided her with a URL to a nonexistent website, www.texasfast.net.

230.    On December 13, 2019, at 4:23 p.m. (CST), Plaintiff Leichtle received an unsolicited call at the -5800 telephone number from Best Storm, who again identified themselves as "Texas Fast."

231.    On January 6, 2020, at 6:27 p.m. (CST), Plaintiff Leichtle received an unsolicited call at the -8784 telephone number from Best Storm, who this time identified themselves as "PT Roofing."

232.    Plaintiff Leichtle asked for the company's website, and the salesperson stated that the company did not have a website.

233.    On June 8, 2020, at 6:31 p.m. (CST), Plaintiff Leichtle received an unsolicited call at the -8784 telephone number from Best Storm.

**O.    *Plaintiff Steiner***

234.    Plaintiff Steiner's telephone number, ending in number -1133, is registered to a cellular telephone service.  All calls to Plaintiff Steiner described herein were to that cellular telephone number.

235.    Plaintiff Steiner has never given prior express written consent to receive telemarketing calls from Best Storm.

236.    On June 11, 2020, at around 10:17 a.m. (CST), Plaintiff Steiner received an unsolicited call at the -1133 telephone number.

237.    The caller ID showed the phone call was from (720) 782-2352, which he subsequently learned was from Best Storm.

238.    Plaintiff Steiner answered.

239.    Unlike on a normal call, no one promptly announced themself to Plaintiff Steiner. Instead, Plaintiff Steiner heard an unnatural click and pause.

240.    Eventually a live salesperson did come on the line.

241.    The salesperson pitched Plaintiff Steiner on having a roof inspection performed, and the salesperson concealed the company's true name.

242.    Plaintiff Steiner did not provide prior express written consent to receive telemarketing calls.

243.    Best Storm did not receive express consent from any of the Plaintiffs prior to sending the unsolicited marketing calls.

244.    Plaintiffs have no affiliation with Best Storm.

245.    These unsolicited calls placed to Plaintiffs' cellular telephones were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) and by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place marketing calls to Plaintiffs' cellular telephones.

246.    The existence of an ATDS is evidenced by the fact that these marketing calls each began with an unnatural pause and click before a live salesperson came on the line.

247.    The existence of an ATDS is further evidenced by various salespersons' statements that they rely on databases to generate telephone numbers of residents in certain areas where storms have recently occurred.

248.    Specifically, upon information and belief, Defendant utilizes a combination of hardware and software systems to send the marketing calls at issue in this case.  The systems utilized by Defendant have the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, en masse, in an automated fashion without human intervention.

249.     The telephone numbers that Best Storm, or its agents, called were assigned to cellular telephone services for which Plaintiffs incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

250.     These telephone calls constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

251.     Thus, these calls by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

252.     Likewise, nearly all Plaintiffs were registrants of the National Do Not Call Registry at the time of the calls.

253.     Defendant made multiple telephone calls to Do Not Call Registrants within a twelve month period in violation of 47 U.S.C. § 227(c).

## V.     CLASS ALLEGATIONS

254.     Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiffs bring this action against Best Storm on behalf of themselves and all other persons similarly situated, as members of two proposed classes or sub-classes:

255.     For the first class, which concerns the receipt of ATDS telephone calls transmitted without prior express consent, Plaintiff proposes the following class definition:

> All persons in the United States (1) who received one or more calls from Best Storm or its agents, (2) to their mobile or cellular telephone number, (3) through the use of any automatic telephone dialing system or artificial or pre-recorded voice system as set forth in 47 U.S.C. § 227(b)(1)(A)(3); (4) on or after four years before the filing of the complaint, and (5) without their prior express written consent.

256.     For the second class, which concerns the receipt of multiple phone calls by National Do Not Call registrants, Plaintiff proposes the following class definition:

> All persons in the United States (1) who received more than one call from Best Storm or its agents, (2) during a twelve-month period (2) to their mobile or cellular telephone number, (3) which number is listed on the National Do Not Call Registry (4) on or after four years before the filing of the complaint, and (5) without their prior express written consent.

257.   Excluded from the Class are Best Storm or any entity in which Best Storm has a controlling interest, each of their respective officers or legal representatives, and any Judge assigned to this action, including his or her immediate family.

258.   The proposed class members are identifiable through phone records, internal call logs, and phone number databases.

259.   Plaintiffs are members of the proposed Classes.

260.   The automated technology Best Storm used to call Plaintiffs' cell phones is capable of contacting thousands of people a day, and so the potential class members number in the hundreds or thousands, at least.   Individual joinder of so many persons is impracticable.

261.   There are questions of law and fact common to Plaintiffs and to the proposed class, including but not limited to the following:

   a.   Whether Best Storm used an automatic telephone dialing system to call the cellular phones of Plaintiff and others;

   b.   Whether Best Storm initiated marketing calls to cellular phones without the prior express written consent of the called parties;

   c.   Whether Best Storm is liable for violations of the TCPA;

   d.   Whether Plaintiff and the other members of the class are entitled to statutory damages under the TCPA;

   e.   Whether Best Storm's actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiffs and the other members of the class; and

      f.   Whether Plaintiffs and members of the class are entitled to equitable relief, including but not limited to injunctive relief.

262.   Plaintiffs' claims are based on the same facts and legal theories as the claims of all class members and therefore are typical of the claims of class members. Plaintiffs and the other class members all received marketing calls to their cellular telephone lines through the same or similar dialing system.

263.   Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the Classes they seek to represent.  Plaintiffs are victim of ATDS marketing calls and violations of the National Do Not Call Registry to their cellular phone without any emergency purpose and without their prior express written consent, and they are committed to the vigorous prosecution of this action.  Plaintiffs have retained counsel competent and experienced in complex TCPA class action litigation.  Plaintiffs will vigorously prosecute this action.  Plaintiffs and their counsel will fairly and adequately protect the interest of members of the class.

264.   Common questions of fact and law predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.  The only individual questions concern identification of class members, which will be ascertainable from records maintained by Best Storm or their agents.

265.   The likelihood that individual class members will prosecute separate actions is remote because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable given the expense involved and the small recoveries available through individual actions.

266.    Plaintiffs, on behalf of themselves and the classes, hereby demands a trial by jury on all issues so triable

**COUNT I**
**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT**
**(47 U.S.C. § 227, *et seq.*)**

267.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein and brings Count I individually and on behalf of the class.

268.    The foregoing acts and omissions of Best Storm. constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making marketing, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the class using an ATDS and/or in violation of the National Do Not Call Registry.

269.    As a result of Best Storm's violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the classes are entitled to an award of $500 in damages for each and every marketing call made to their cellular telephone numbers using an ATDS violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), and $500 in damages for each and every marketing call made to their cellular telephone numbers in violation of the National Do Not Call Registry, 47 U.S.C. § 227(c)(5).

270.    Plaintiff and members of the classes are also entitled to, and do seek, injunctive relief prohibiting Best Storm from violating the TCPA, 47 U.S.C. § 227, by making marketing calls, except for emergency purposes, to cellular telephone numbers using an ATDS or artificial or prerecorded voice and in violation of the National Do Not Call Registry.

271.    Best Storm's violations were knowing or willful.

272.    If the Court determines that Best Storm's actions were knowing or willful,

then Plaintiffs request that the Court increase the statutory damages up to three times the amount. *See* 47 U.S.C. § 227(b)(3).

**WHEREFORE**, Plaintiffs, for themselves and all class members, requests the following relief:

A. Certification of the proposed classes;

B. Appointment of Plaintiffs as representative of the classes;

C. Appointment of Plaintiffs' counsel as counsel for the classes;

D. An order awarding statutory damages of at least $500 per marketing calls at issue pursuant to 47 U.S.C. § 227(b)(3)(B);

E. An order awarding statutory damages of at least $500 per marketing calls at issue pursuant to 47 U.S.C. § 227(c)(5)(B);

F. An order increasing those statutory damages up to three times ($1,500 per marketing calls at issue) pursuant to 47 U.S.C. § 227(b)(3)(C) and (c)(5)(C);

G. An order enjoining Best Storm from engaging in the same or similar unlawful practices alleged herein;

H. An order awarding costs of suit;

I. Leave to amend this Complaint to conform to the evidence presented at trial; and

J. Orders granting any other relief this Honorable Court deems equitable, proper, and just.

/s/ Cory S. Fein
CORY S. FEIN (TX Bar No. 06879450)
CORY FEIN LAW FIRM
712 Main Street, Suite 800
Houston, TX 77002
(281) 254-7717
(530) 748 - 0601 (fax)
cory@coryfeinlaw.com

*/s/ Sean C. Wagner*

Sean C. Wagner (N.C. Bar No. 50233)
Derek M. Bast (N.C. Bar No. 49069)
*Pro Hac Vice Materials Forthcoming*
WAGNER HICKS PLLC
831 E. Morehead Street, Suite 860
Charlotte, North Carolina 28202
Telephone: (704) 705 7358
sean.wagner@wagnerhicks.law
derek.bast@wagnerhicks.law

ATTORNEYS FOR PLAINTIFFS
AND THE PROPOSED CLASSES